THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| STEVE SANTOYO and MICHELLE SANTOYO, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 10-CV-04050-NKL ) ) |
| BEAR LAKE HOLDINGS, INC. d/b/a/ THOMPSON/CENTER ARMS and POWDER HORN RIFLES & SPORTING GOODS, INC., | ) ) ) ) ) |
| Defendants. | |

**ORDER**

Steve Santoyo and Michelle Santoyo ("the Santoyos") filed a Complaint in the Circuit Court of Boone County, Missouri, against Defendants Bear Lake Holdings, Inc., d/b/a Thompson/Center Arms ("Bear Lake") and Powder Horn Guns & Sporting Goods, Inc. ("Powder Horn"). Bear Lake removed the action to this Court.

Pending before the Court is the Santoyos' Motion to Remand to the Circuit Court of Boone County, Missouri [Doc. # 6]. For the following reasons, the Motion is denied.

**I. Background**

According to the Petition, in late 2005 or early 2006, Mr. Santoyo took his Black Diamond muzzleloader rifle, manufactured by Bear Lake, a New Hampshire corporation, to Powder Horn, a Missouri corporation, for service. The Petition states that Powder Horn recommended to Mr. Santoyo that the rifle be shipped to Bear Lake for repair and then

shipped the rifle to Bear Lake. Bear Lake allegedly cleaned and repaired the rifle and shipped it back to Powder Horn, which returned it to Mr. Santoyo. The Santoyos allege that on November 28, 2008, Mr. Santoyo fired the rifle and it exploded, causing serious injury to his head and face. The Santoyos seek damages against Bear Lake and Powder Horn on theories of strict liability, negligence, negligent supply of a dangerous instrumentality, and *res ipsa loquitur*, as well as loss of consortium and punitive damages.

The Santoyos contend that removal was invalid because co-Defendant Powder Horn did not timely consent to Bear Lake's removal. Bear Lake and Powder Horn respond that Powder Horn is fraudulently joined, such that this Court has diversity jurisdiction regardless of Powder Horn's consent.

**II.  Discussion**

Generally, a party may remove an action if the action could originally have been filed in federal court. 28 U.S.C. § 1441(a). Federal diversity jurisdiction exists when no defendant is a citizen of the same state as any plaintiff and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The removing party bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). In reviewing a motion to remand, a district court is required to resolve all doubts about federal jurisdiction in favor of remand. *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007).

The right of an out-of-state defendant to remove to federal court cannot be defeated by fraudulent joinder of a resident defendant. *Simpson v. Thomure*, 484 F.3d 1081, 1083 (8th Cir. 2007). Joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the defendants. *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1004 (8th Cir. 2006). Fraudulent joinder is not present if there is a "'colorable' cause of action – that is, if the state law *might* impose liability on the resident defendant under the facts alleged." *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) (emphasis in original). Thus, the Court considers whether the Santoyos have a colorable cause of action against Powder Horn.

### A. Strict Liability Claim

Missouri has adopted the rule of strict liability as stated in Restatement (Second) of Torts Section 402A. *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 364 (Mo. 1969). Under Section 402A, strict liability may arise where the defendant is "[o]ne who sells any product in a defective condition reasonably dangerous to the user or consumer or to his property." *Id.* (quoting Restatement (Second) of Torts § 402A (1965)). The purpose in adopting Section 402A was to "insure that the costs of injuries resulting from defective products are borne by the manufacturers (and sellers) that put such products on the market." *Id.*

Under Section 402A, the Santoyos' strict liability claim against Powder Horn depends on Powder Horn being a "seller" of the rifle which allegedly caused Mr. Santoyo's injury. Missouri courts have recognized "seller" as used in Section 402A as encompassing one

3

involved in placing a product in the stream of commerce. *See, e.g., Welkener v. Kirkwood Drug Store Co.*, 734 S.W.2d 233, 241 (Mo. App. 1987) ("Parties in the chain of distribution of a product, including manufacturers, sellers, wholesale distributors or other middlemen in the manufacturing and selling process come within the umbrella of the rule.").

Missouri has recognized that the seller of a product can incur strict liability for defects caused by the seller's subsequent service and repairs. In *Winters v. Sears, Roebuck & Co.*, the court held the seller of a television strictly liable for its faulty post-sale repairs. 554 S.W.2d 565, 572 (Mo. App. 1977). However, Missouri courts have not extended this rule to impose strict liability on repairers not connected to the original sale of the product. Other jurisdictions have explicitly refused to impose strict liability on mere repairers. *E.g., Stephenson v. Honeywell Int'l., Inc.*, No. 07-2494-JWL, 2010 WL 1284469, at *9 (D. Kan. Apr. 2, 2010) (declining, in the absence of precedent, to extend Kansas law to impose strict liability on a repairer unconnected to the original sale and noting that "[t]he majority of other jurisdictions have refused to impose strict liability on mere repairers of products"); *Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 604 F.2d 950, 955-56 (5th Cir. 1979).

The Santoyos do not allege that Powder Horn sold Mr. Santoyo his rifle or acted in any other manner to bring the store within the chain of distribution in the manufacturing and selling process. The Santoyos merely allege that Mr. Santoyo brought his rifle to Powder Horn for repair. Absent any indication that Missouri would extend strict liability to repairers of products unconnected to the original sale, the Santoyos fail to show a reasonable basis in fact and law supporting a claim against Powder Horn based on strict liability.

4

### B. Negligence Claims

The Santoyos raise several potential theories for negligence claims against Powder Horn. In a negligence action, the plaintiff must show that the defendant had a duty to protect the plaintiff from injury, the defendant breached that duty, and the defendant's breach proximately caused injury to the plaintiff. *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.*, 75 S.W.3d 247, 257 (Mo. 2002).

First, the Court will address the Santoyos' contention that Powder Horn negligently supplied Mr. Santoyo with a dangerous instrumentality. To incur liability for negligent supply of a dangerous instrumentality, the defendant must have supplied the dangerous instrumentality for use. *Bland v. IMCO Recycling, Inc.*, 67 S.W.3d 673, 682 (Mo. Ct. App. 2002). In *Gregorecz v. NES Rentals Holdings, Inc.*, the court culled from the Restatement (Second) of Torts several rules Missouri courts have considered in setting the scope of "supplier" in this context. No. 4:07-CV-2061-MLM, 2008 WL 441649, at *3-4 (E.D. Mo. Feb. 14, 2008). To begin with, "supplier" can include sellers, lessors, donors, lenders, bailors, and repairers who have knowledge that the instrumentality is defective because of the repair work performed. *Id.* at *3 (citing Restatement (Second) of Torts § 388 cmt. c (1965)). Also, the "supplier" must have a business interest in the dangerous instrumentality. *Id.* at *4 (citing Restatement (Second) of Torts § 392 cmt. a (1965)). Finally, the "supplier" must have possession or control of the dangerous instrumentality. *Id.* (citing Restatement (Second) of Torts § 392 cmt. c (1965)).

The Santoyos' Petition does not satisfy these factors. The Santoyos do not contend that Powder Horn sold, leased, donated, lent, or actually repaired Mr. Santoyo's rifle. They do not contend that Powder Horn charged money for sending the rifle to Bear Lake or otherwise had a business interest in the transaction. Their Petition does not support an argument that Powder Horn established possession or control over the rifle. Under the Petition, Powder Horn merely acted as a middleman in the receipt and delivery of the rifle between Mr. Santoyo and Bear Lake. Thus, the Santoyos have failed to allege that Powder Horn in any way "supplied" the rifle that injured Mr. Santoyo.

Second, the Santoyos allege that Powder Horn failed to exercise ordinary care by failing to provide Mr. Santoyo with adequate information, instructions, and warnings about his rifle. Missouri has adopted Restatement (Second) of Torts Section 388, under which liability can be imposed on a supplier for failing to warn of a product's dangerous characteristics. *E.g. Hill v. Gen. Motors Corp.*, 637 S.W.2d 382, 384 (Mo. Ct. App. 1982). Because the Santoyos, for the reasons stated above, make no legitimate contention that Powder Horn acted as a supplier, they have not stated a colorable claim that Powder Horn assumed a duty to warn under Missouri law. The Santoyos call to the Court's attention no other theory under which Powder Horn assumed a duty to warn.

Third, the Santoyos contend Powder Horn was negligent in recommending that the gun be sent to the manufacturer for repair. Claims based on the negligent recommendation of a contractor are commonly brought under the theory of negligent misrepresentation, which requires, among other things, that the party making the recommendation have a pecuniary

6

interest in the matter and that false information is provided. *See, e.g., Amega Holdings, Inc. v. Spirit Aviation, Inc.*, No. 06-4022-CV-C-WAK, 2006 WL 1966748, at *2 (W.D. Mo. July 11, 2006). The few jurisdictions that have analyzed such a claim outside the context of negligent misrepresentation have generally held that one is not liable in recommending a contractor where the contractor is not an agent of the party making the recommendation. *See, e.g., Dickens v. Farm Bureau Mut. Ins. Co.*, 868 S.W.2d 476 (Ark. 1994) (holding that an insurer assumed no liability by recommending an allegedly negligent home repair contractor). The Santoyos point to no authority supporting a claim based on the negligent recommendation that a product be returned to its manufacturer.

Absent any reason to believe that Powder Horn had a pecuniary interest in the repair of Mr. Santoyo's gun or that Bear Lake acted as an agent of Powder Horn, the Santoyos' argument that Powder Horn assumed liability by recommending that the gun be sent to the manufacturer is not a colorable claim.

Fourth, the Santoyos contend that Powder Horn is liable under the doctrine of *res ipsa loquitur*. The doctrine of *res ipsa loquitur* applies in Missouri when: "(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; and (c) the defendant possesses superior knowledge or means of information as to the cause of the occurrence." *Sides v. St. Anthony's Med. Ctr.*, 258 S.W.3d 811, 814 (Mo. 2008).

The Santoyos' petition fails to support an argument that Powder Horn possessed superior knowledge or means of information as to the cause of the alleged defect in Mr.

Santoyo's rifle. As discussed, the Santoyos do not allege that Powder Horn sold Mr. Santoyo the rifle, nor do they allege that Powder Horn actually repaired the rifle or otherwise acted in a manner that would give the store superior knowledge as to any defects in the rifle. They have not alleged a claim under the doctrine of *res ipsa loquitur*.

Because there is no reasonable basis in fact and law supporting a claim against Powder Horn, Powder Horn has been fraudulently joined.

### C. Consent to Removal

The Santoyos argue that removal was improper because Powder Horn did not timely consent to removal. A fraudulently joined party's consent is not required for removal. *Simpson v. Niagra Mach. & Tool Works*, No. 05-1122-CV-W-FJG, 2006 WL 181954, *3 n.1 (W.D. Mo. Jan. 24, 2006). Powder Horn's consent was therefore unnecessary. The case was properly removed to this Court because diversity exists between the Santoyos and Bear Lake.

### III. Conclusion

Accordingly, it is hereby ORDERED that Plaintiffs' Motion to Remand to the Circuit Court of Boone County, Missouri, [Doc. # 6] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: June 15, 2010
Jefferson City, Missouri